IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESUS OLIVO, #683968, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 3:06-CV-2399-L |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. §636(b), and an order of the District Court in implementation thereof, the subject cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type Case: This is a petition for a writ of habeas corpus brought by a state inmate pursuant to 28 U.S.C. § 2254.

Parties: Petitioner is presently confined within the Texas Department of Criminal Justice -- Correctional Institutions Division (TDCJ-CID). He is represented by retained counsel. Respondent is the Director of TDCJ-CID. The Court issued process in this case.

Statement of Case: Following his plea of not guilty, a jury convicted Petitioner of murder in Criminal District Court No. 3 of Dallas County, Texas, in Cause No. F93-66688-UJ. (Petition (Pet.) at 2). On March 28, 2004, punishment was assessed at forty years imprisonment. (*Id.*). Although Petitioner filed a *pro se* notice of appeal, his appeal was dismissed for want of jurisdiction on January 31, 1995, because the notice of appeal was untimely. *See Olivo v. State*,

894 S.W.2d 58 (Tex. App. -- San Antonio, 1995). On March 27, 1996, the Texas Court of Criminal Appeals (TCCA) affirmed the lower court's decision. *See Olivo v. State*, 918 S.W.2d 519, 520 (Tex. Crim. App. 1996).

On June 21, 1996, Petitioner filed an application for a writ of habeas corpus pursuant to art. 11.07, Texas Code of Criminal Procedure, seeking an out-of-time appeal. *See* No. W93-66688-A. On November 13, 1996, the TCCA granted him the right to file an out-of-time appeal. *Ex parte Olivo*, No. WR-32,293-01, and No. AP75,575-01. Petitioner filed a timely notice of appeal, and on November 19, 1998, The Fifth District Court of Appeals affirmed the judgment of the trial court. *Olivo v. State*, No. 05-96-01954-CR (Tex. App. -- Dallas 1998, pet. ref'd). The TCCA refused a petition for discretionary review on May 5, 1999. *See* No. PD-0222-99.

In his federal petition, filed on December 28, 2006, Petitioner alleges two grounds for relief: (1) his counsel's ineffectiveness prevented the filing of his federal petition before the expiration of the one-year period, and (2) the trial court's failure to instruct the jury on the lesser included offense of voluntary manslaughter violated his due process rights.[1]

In response to the order to show cause, Respondent filed an answer seeking dismissal of the petition as time barred and, alternatively, denial on the merits. Petitioner filed a reply.

<u>Findings and Conclusions</u>: The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. *See* 28 U.S.C. § 2244(d).

The one-year period is calculated from the latest of either (A) the date on which the

---

[1] Since counsel filed the federal petition, the "mailbox rule" is inapplicable to this case. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (holding that prisoner litigants represented by an attorney are not entitled to the benefit of the mailbox rule).

2

judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition. Nor does he base his petition on any new constitutional right under subparagraph (C). With regard to subparagraph (D), the Court determines that the facts supporting the claims raised in the instant petition for habeas relief became known or could have become known prior to the date Petitioner's state judgment of conviction became final. Thus, the Court will calculate the one-year statute of limitations from the date Petitioner's conviction became final at the conclusion of direct review or upon the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A).

In *Salinas v. Dretke*, 354 F.3d 425, 430-431 (5th Cir. 2004), the Fifth Circuit Court of Appeals held that in Texas the procedures for seeking an out-of-time petition for discretionary review (PDR) is part of the state habeas review process, not the direct appeal review process. As a result, the granting of an out-of-time PDR "does not require a federal court to restart the running of AEDPA's limitations period altogether." *Id.* at 430. Rather, "when a petitioner convicted in the Texas system acquires the right to file an 'out-of-time' PDR, the relief tolls the AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to

grant further relief." *Id.*

Although the *Salinas* opinion did not address the running of the limitations period in the context of the granting of an out-of-time appeal, courts have held that the same reasoning applies. *See Roach v. Quarterman*, No. 3:05cv2439-P, 2006 WL 2586087, *3 (N.D. Tex. Dallas Div. Sept. 8, 2006) (accepting findings and conclusions of Magistrate Judge) (holding that the reasoning in *Salinas* applies to the granting of an out-of-time appeal to the intermediate appellate court); *Powell v. Dretke*, No. 3:03-CV-2631-P, 2004 WL 389094, at *2 (N.D. Tex. Feb. 26, 2004), findings and conclusions accepted (Mar. 9, 2004) (same); *McDuffie v. Dretke,* No. Civ.A. 5:03-CV-131-C, 2004 WL 594109, at *2 (N.D. Tex. Mar 5, 2004) (same).

In Texas, the procedure for seeking an out-of-time appeal, just like the procedure for seeking an out-of-time PDR, is through the state habeas process. *See Salinas*, 354 F.3d at 431 and n. 7 (noting that the appropriate vehicle for seeking an out-of-time appeal from a final felony conviction is by art. 11.07 writ of habeas corpus). Therefore, it follows that the granting of an out-of-time appeal, much like the granting of an out-of-time PDR, does not restart the one-year clock.

In this case, Petitioner's conviction became final on April 27, 1994, thirty days after the judgment of conviction. *See* Tex. R. App. P. 26.2(a)(1) (effective Sept. 1, 1997), formerly Tex. R. App. P. 41(b)(1); *see also Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000). "Although Petitioner sought to appeal in this case, the fact that he did so untimely is equivalent for AEDPA purposes [to] having failed to file any appeal at all." *Alvarez v. Dretke*, 2005 WL 825744, *1 (W.D. Tex. Mar. 29, 2005). A petitioner participates in the direct review process when he files a timely appeal in the intermediate court of appeals and a timely PDR. *Foreman v. Dretke*, 383

F.3d 336, 340 (5th Cir. 2004) ("Because Foreman filed a timely appeal in the intermediate court and timely filed a PDR, we conclude that he participated in direct review."); *Roach v. Quarterman*, No. 3:05cv2439-P, 2006 WL 2586087, *3 (N.D. Tex. Dallas Div. Sept. 8, 2006) (accepting findings and conclusions of Magistrate Judge) ("The period of the pendency of a direct appeal dismissed for lack of jurisdiction because the appeal itself is untimely, cannot be counted as part of the time before 'the judgment became final by the conclusion of [direct] review' under § 2244(d)(1)(A)."); *Kessinger v. Cockrell*, 2003 WL 22056005, *4 (N.D. Tex. 2003) (same).

The one-year period commenced to run on April 28, 1994, the day after Petitioner's conviction became final, and expired on April 27, 1995. While Petitioner was granted an out-of-time appeal on November 13, 1996, that relief did not statutorily toll the one-year clock. *See Roach*, *supra*, No. 3:05cv2439-P, 2006 WL 2586087, *3 (extending *Salinas* opinion to out-of-time appeal context). By the time Petitioner filed his art. 11.07 writ on June 21, 1996, seeking an out-of-time direct appeal, the one-year period had long elapsed. As a result, his federal petition, filed on December 28, 2006, more than eleven years after the expiration of the one-year period is clearly time barred absent equitable tolling.

The Supreme Court has not decided whether equitable tolling of the AEDPA limitations period is available. *See Lawrence v. Florida*, ___ U.S. ___, 127 S.Ct. 1079, 1085 (2007). Nevertheless, in *Lawrence*, the Supreme Court stated that to be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* In accord with *Lawrence*, the Fifth Circuit has held that "equitable tolling of the AEDPA limitations period is

available " 'in rare and exceptional circumstances' where it is necessary to 'preserve[ ] a plaintiff's claims when strict application of the statute of limitations would be inequitable.' " *Fierro v. Cockrell,* 294 F.3d 674, 682 (5th Cir. 2002) (quoting *Davis v. Johnson,* 158 F.3d 806, 810-11 (5th Cir.1998)); *see also Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007), *pet. for cert. filed* (Jun. 26, 2007) (No. 07-6248).

Petitioner requests equitable tolling for events that occurred long *after* the expiration of the one-year period. Specifically, he alleges that his retained habeas counsel repeatedly misled and openly lied to him and his family regarding the filing of post-conviction relief. Petitioner overlooks, however, that he did not hire his habeas counsel until February 17, 2000, four years and eight months after the one-year period had elapsed in his case, and that counsel did not begin his misleading and unethical practices until later that year.

It is axiomatic that equitable tolling must be based on conduct that took place or at least began during the period a litigant is seeking to toll on equitable grounds. *See United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (attorney error or neglect occurred during one-year grace period); *United States v. Winn*, 292 F.3d 226, 228-229 (5th Cir. 2002) (attorney's allegedly misleading practices occurred during one-year period); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (two-year period during which attorney failed to pay $5 filing fee began before expiration of one-year statute of limitations); *Vineyard v. Dretke*, 125 F. Appx. 551, 552 (5th Cir. Mar. 14, 2005) (unpublished *per curiam*) (attorney's deliberate or negligent misinformation that PDR was still pending occurred during one-year limitations period, and attorney's misleading practices about filing of habeas petition began during one-year period); *Wessinger v. Cain*, 358 F.Supp.2d 523, 529-30 (M.D. La. 2005) (death penalty petitioner who reasonably

6

relied on attorney's silence, which equated to deception, during one year period was entitled to equitable tolling).

Since the conduct at issue in this case did not begin until four to five years *after* the one-year period had elapsed, it cannot provide a basis for tolling the limitations period on equitable grounds. Therefore, Petitioner is not entitled to equitable tolling and his habeas petition should be dismissed as time barred.

Even assuming the untimely direct appeal would count in determining the finality of Petitioner's conviction, the federal petition would still be untimely. Under this scenario, Petitioner's conviction became final on June 25, 1996, ninety days after the TCCA affirmed the lower court's decision dismissing his appeal for want of jurisdiction. Since Petitioner filed his art. 11.07 application, seeking an out-of-time appeal, on June 21, 1996, the one-year period was statutorily tolled throughout the pendency of the art. 11.07 application, the out-of-time direct appeal review process, and the PDR. The one-year period began to run on May 6, 1999, the day after the TCCA denied the PDR, and elapsed on May 5, 2000. Therefore, the federal petition, filed on December 28, 2006, is time barred unless equitable tolling applies.

In support of equitable tolling, Petitioner again relies on the conduct of his state habeas counsel, R. Michael Thomas, whom he hired on February 17, 2000, two one-half months before the expiration of the one-year period. (Petition, attachment at p. 4-5). Petitioner alleges that his habeas attorney rendered ineffective assistance when he missed the one-year statute of limitations deadlines, and failed to inform him of the deadline existence. He further alleges that his counsel's ineffectiveness, compounded with his misleading and unethical practices, prevented the timely filing of this federal petition. In this respect, he asserts that his attorney

actively misled and deceived him and his family about the work that was being done.

Petitioner's reliance on his counsel's ineffective assistance does not justify equitable tolling. The Fifth Circuit Court of Appeals has long recognized that "mere attorney error or neglect is not an extraordinary circumstance" which warrants equitable tolling. *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002). More recently, in *Lawrence v. Florida*, ___ U.S. ___, 127 S.Ct. 1079, 1085 (2007), the Supreme Court rejected a request to equitably toll the one-year period based on a counsel's mistake in calculating the limitations period. The Court noted that "[i]f credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Id.* The Court also stated that "[a]ttorney miscalculations is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Id.*; *Johnson v. Quarterman*, 483 F.3d 278, 286 (reiterating Supreme Court's holding in *Lawrence*); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (stating that a prisoner does not have a right to counsel during post-conviction proceedings); *Cousin*, 310 F.3d at 849 (same).

Insofar as Petitioner complains about his own unfamiliarity with post-conviction remedies and the one-year federal limitations period, his claim fares no better. The Fifth Circuit has long held that "neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999); *see also Johnson*, 483 F.3d at 286 ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling.") (*citing Fiero v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)).

Petitioner also complains that his counsel misled and deceived him and his family about

8

the work that he was doing, and that he detrimentally relied on his counsel's deceptive representations. In support of these assertions, he sets out the following course of events:

Petitioner and his family hired Mr. Thomas on February 17, 2000. (Pet. at Exhs. 2 and 3). On April 19, 2000, Petitioner mailed to Mr. Thomas some documents, and appraised him of his current address. (*Id.* at Exh. 3). Mr. Thomas did not respond. (*Id.*). In late 2000 and again in early 2001, Petitioner's family began contacting Mr. Thomas, who failed to respond to the phone calls. (Pet., attachment "First Ground" at 1). On April 15, 2001, after Petitioner's family went to see him in person, Mr. Thomas informed Petitioner that "there are some documents that need to be retrieved and a writ still needs to be filed from our office," and that he was "of the opinion that we need to leave the State court and go directly to Federal Court." (Pet. at Exh. 3). In May 2001, Petitioner wrote a letter to his attorney expressing his concern about the handling of his case, but reiterating that he wanted his "continued representation and the filing of the writ in federal court upon exhaustion of state court remedies." (*Id.*). In October 2001, after Mr. Thomas had advised Petitioner's brother that documents had been filed, Petitioner again wrote counsel requesting clarification of what had been filed. (*Id.*). Counsel failed to respond. (Pet., attachment "First Ground" at 2). After this date, Mr. Thomas moved and failed to provide his new address to Petitioner and his family. (*Id.*). His phone number also changed. (*Id.*). It appears though that, after being contacted by Petitioner's family, he continued to assure them that the case was being handled. (*Id.*).

On January 17, 2005, Petitioner wrote a letter to Mr. Thomas's law firm requesting the status of his case, and requesting full refund of the legal fees paid and return of all his legal files and documents. (Pet. at Exh. 3). In the next to the last paragraph, Petitioner acknowledged that

9

the one-year limitation period had expired, which prevented him from filing a federal petition. (*Id.*). The law firm forwarded Petitioner's letter to Mr. Thomas, who on March 15, 2005, wrote a letter to Petitioner informing him that he had to order his file once again from Dallas County, that there were exceptions to the time-bar, and that complete attention was being given to his case. (*Id.*). In May 2005, Petitioner responded to his counsel's March 15, 2005 letter. (*Id.*). Having received no further information Petitioner twice wrote to Mr. Thomas in January 2006 at different addresses in an attempt to locate him. In April or May 2006, Petitioner learned, through, his current counsel, that Mr. Thomas had resigned from the practice of law. (Pet. at Exhs. 4 and 5).

An attorney's intentional deceit can warrant equitable tolling if the petitioner reasonably relied on his attorney's deceptive misrepresentation. *Riggs*, 314 F.3d at 799; *United States v. Wynn*, 292 F.3d 226, 230-31.

Petitioner does not allege any direct deception by habeas counsel. He does not claim that Mr. Thomas told him that he had filed a state habeas application or a federal petition on his behalf. *Cf. Wynn*, 292 F.3d at 228-31 (where attorney misinformed the petitioner that he had filed a habeas application). Petitioner's pleadings merely allege that Mr. Thomas had agreed to pursue habeas corpus relief for Petitioner in the future as part of the initial "client retainer" agreement and his subsequent promises. *See Schlueter v. Varner*, 384 F.3d 69, 76-78 (3rd Cir. 2004) (refusing to apply equitable tolling where petitioner's counsel merely said that he was going to file a petition). Arguably, counsel's alleged failures harmed Petitioner. However, Petitioner's allegations, taken as true, do not show an intentional deception by counsel on which

Petitioner relied.  *Cf. Wynn*, 292 F.3d at 230-31.[2]

Even assuming Petitioner could show intentional deception on his attorney's part, and detrimental reliance on his part, the relevant conduct at issue occurred *after* the one-year period had expired.  As noted above, equitable tolling must be based on conduct that took place or at least began during the period a litigant is seeking to toll on equitable grounds.  *See supra* at p. 6. Petitioner's own allegations establish that his counsel's deception and unethical practices began at the very earliest in late 2000 or early 2001, a good six to eleven months *after* the one-year period had elapsed.  *Cf. Vineyard v. Dretke*, 125 F. Appx. 551, 552 (5th Cir. Mar. 14, 2005) (unpublished *per curiam*) (where the *pro se* prisoner had asserted under penalty of perjury that on specific dates *during* the limitations period, his counsel had deliberately or negligently misinformed him that his PDR was still pending; the *pro se* prisoner also presented affidavit and documentary evidence that counsel subsequently misled him and his sister to believe that he was going to prepare and file a 28 U.S.C. § 2254 petition, further delaying the filing of a pro se federal petition).

Moreover, this is not a case where Petitioner demonstrated due diligence in pursuing his habeas rights.  *See Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (to be entitled to equitable tolling a petitioner must pursue his rights diligently); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000), *reh'g granted in part*, 223 F.3d 797 (5th Cir. 2000) (habeas petitioner must purse "the process with diligence and alacrity.").  Petitioner hired Mr. Thomas with only two and one-half months remaining on the one-year limitations period.  After his initial contact on April 19, 2000,

---

[2]    This conclusion should not be misread to condone or excuse Mr. Thomas' conduct.  To the contrary, the Court acknowledges that arguably Mr. Thomas' conduct was unacceptable and fell below professional standard.

for the purpose of providing documents, Petitioner's other documented contacts with Mr. Thomas were scarce. Petitioner waited almost one year before sending him a second letter in May 2001. He waited an additional five months before sending his third letter in October 2001, and more than three years before sending his January 17, 2005 letter to Mr. Thomas' law firm complaining about the handling of his case.

Petitioner's own family also unduly delayed in contacting Mr. Thomas and following up on his work in 2000 and 2001, and in locating Mr. Thomas during the ensuing three years when he moved without providing his new address and phone number. These dilatory practices did not end here. In 2005, Petitioner continued to rely on Mr. Thomas' empty promises, although he knew that the one year period had long expired. After learning of Mr. Thomas' resignation in May 2006, Petitioner waited an additional seven months before submitting this federal petition for filing. While the file allegedly needed to be reconstructed, either his new attorney or Petitioner, proceeding *pro se,* could easily have filed a skeletal petition and supplemented it later. *See Johnson v. Quarterman*, 487 F.3d 278, 287 (noting that, "when counsel's computer failed on the evening of the due date, counsel could have filed a skeletal handwritten petition and supplemented it later.").

The circumstances presented in this case demonstrate lack of due diligence on Petitioner's part. "[E]quity is not intended for those who sleep on their rights. *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).

The Court concludes that Petitioner is not entitled to equitable tolling.

RECOMMENDATION:

For the foregoing reasons it is recommended that the habeas corpus petition be DISMISSED as barred by the one-year statute of limitations. *See* 28 U.S.C. § 2244(d).

It is further recommended that Petitioner's request for an evidentiary hearing -- raised in his petition in connection with his first ground for habeas relief (*see* Pet., attachment "First Ground" at 6-7) -- be DENIED.

The Clerk will transmit a copy of this recommendation to counsel for Petitioner and counsel for Respondent.

Signed this 23rd day of October, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.